24-1550 Eastern Missouri, Jefferson County v. Express Scripts, et al. Good morning, Your Honor. May it please the Court, Chris Michel for Appellants Express Scripts and Optum. The pharmacy benefit managers in this case perform extensive work under federal officers, administering pharmacy prescription drug benefits for the U.S. military, the Department of Veterans Affairs, and federal employee health plans. Jefferson County now admits that it seeks to impose liability on the PBMs for or relating to that work under federal officers. What is the admission specifically you're talking about? I mean, are they admitting that they're seeking to impose liability on those what I'd call federal claims, or is that evidence in support of other claims? It's not clear to me what the admission you're referring to is. Right. So they are admitting in two different places that they intend to use my client's work for federal officers as evidence for their public nuisance claim. That's the underlying claim. And if you look at page 640 in the appendix, that's where the clearest admission is. In your mind, does that trigger federal jurisdiction then? That's not the most precise question, but I'm trying to understand if that distinction matters, that they're using it as evidence of what? Right. So I think it does. If you look at the text of the statute, the Federal Officer Removal Statute, 1442A1, it says that there's federal jurisdiction where the claim is for or related to the defendant's work under a federal officer. So would this relate to or? I mean, it's both for and related to. After all, they are admitting that they are seeking to use this work as substantive evidence of knowledge that is an element of the underlying claim. And I think using that work as evidence to support the claim certainly falls within the ordinary meaning of for or related to. After all, the underlying purpose of the Federal Officer Removal Statute, which this court in cases like the Minnesota v. American Petroleum case has said must be construed broadly rather than grudgingly, is to ensure that there's a federal forum for federal officers or those acting under federal officers to present their claims and defenses. To be clear, we're not asking for the case to be dismissed today. The question is just whether the claims will proceed in federal court or in state court. And I think under these recent expert liability reports, that part of the case is relatively straightforward. I'm happy to address a little further. I think even without that admission, there are other reasons why the case by federal officer jurisdiction is satisfied. But I think it may be best to turn to the timeliness issue because that was the principal rationale of the district court. The district court committed a straightforward legal error with respect on that point. The district court applied the wrong standard as this court and every other court of appeals that has considered the question has agreed. The language in 1446b-3 requires an unequivocal and unambiguous basis for removal in order to start the 30-day removal clock. The fundamental problem with the district court's decision is that it never even mentioned that standard, let alone concluded that it could be satisfied. And it could not, on this record, be satisfied. After all, just to recap the relevant events here, what happened was that the county served discovery responses that purported to rely on my client's federal work on one day, February 3rd. The next day, the county withdrew those responses and then the county stipulated that it was not relying on my client's work for federal officers. Now whatever else you might say about that, it cannot be said that that's an unequivocal and unambiguous basis for my clients to remove under federal officer removal. And for the county to now come in and say, we are openly relying on this federal work, but you can't remove because you had to do that earlier when we told you we were not relying on that work, is, with respect, the kind of gamesmanship that this court has rightly refused to countenance when interpreting the federal rule. Wouldn't you be able to enforce the stipulation for the district court? I think it's possible we could enforce the stipulation back in the state courts, but that's not our only option. You know, the text of the statute makes clear that if the plaintiff is bringing the suit for or related to our work under federal officers, we can remove the case to federal court. After all, we could always make a federal preemption defense or other federal claim, federal defenses in state court, but this court and the Supreme Court have made clear for decades that that alone is not enough to defeat the federal officer right. Congress created this right so that those claims, as the Supreme Court said in the Willingham case, for example, those defenses can be presented to a federal court. Now, is it clear that you could have removed initially when the case got started, but opted not to? I don't think it's clear within the, importantly, within the meaning of the clarity that's required under this statute, the unambiguous and unequivocal standard. I confess. You don't think you had the right to remove it when you were first served with this lawsuit? I think if pressed today, I would say we probably did have the right to remove it, but I don't think we had anything approaching an unambiguous and unequivocal right to remove it. And I know that may sound like there's some tension, but that's a familiar concept in the law. I think earlier this morning, the court heard an argument about qualified immunity. It's, of course, common to say there could be a constitutional violation, but not a violation of clearly established law. And here, there's two similar standards. It's possible that a defendant can remove a case, but as this court explained in Gibson and every other circuit that has addressed it has explained. So what do you say for the argument that, well, essentially, you've waived this option by litigating this case for a substantial period of time? Right. I understand that question, but I think the waiver doctrine, which is a common law doctrine, can't be understood to mean the very thing that this court has refused to read 1446b-3 to say. After all, all those cases that say when you're in the daylight between the right to remove on the one hand and the unambiguous and unequivocal duty to remove within 30 days on the other hand, if you could then turn around and say, well, you waived by not taking the right to remove, that would nullify all of those decisions, which are interpreting a federal statute. And with respect, I think that would be allowing the judge-made waiver doctrine to swallow the rule that Congress has specified in 1446b-3. I think this court made that clear in Gibson, but there are other circuits, and we cite them in our brief, that has made it, if anything, even clearer. They say that the right to remove and the duty to remove within 30 days are not two sides of the same coin. I think that's from the Glazer decision in the Sixth Circuit, which was the decision this court relied on in Gibson. I think Judge O'Scalin's opinion for the Ninth Circuit and Cox-Hazen makes that point particularly clear as well. The First Circuit and the Second Circuit have done the same thing. So I think respectfully, the case, it was timely removed. The fact that we could have removed it earlier does not establish that we unequivocally and unambiguously could have. After all, just to play it out, I think what the county would have us do, you know, they served this report on February 3rd, then they withdrew it on February 4th. They said, and then they said, we are not relying on your work for federal officers. I think they would have had us remove the case at that point to the federal district court. And frankly, I think that would have been a very difficult argument for us to make, that they are saying they're not relying on it, and yet here we are. And that would be, I think, incentivizing unnecessary litigation, what this court has called protective removals, and would be creating a number of negative incentives for litigation. Whereas you want to encourage parties to give straight answers to the question, if they had simply given the straight answer that, yes, we are relying on your work for federal officers, we would have removed to federal court at that time. And when they did give us that straight answer, we did remove to federal court. Is this, help me here, are you making like an equitable tolling argument, that your time period to remove is told during this period of time, that the, that you've been told that the county is not relying on federal prescriptions? Or is it kind of an argument that, well, once they tell you they're not relying on those, that's it. And they can't go back. And your obligation to remove, if you want to, just never accrues again. Right, so I think we're not making an equitable tolling argument. We are ultimately just applying, in my view, the text of the statute. The statute says that you have to remove in 30 days if there is, as relevant here, an other paper from which it may be ascertained that the case is or has become removable. And our position is that that other paper, that the county and the district courts say triggered that clock, did not allow us to ascertain within the meaning of that word. After all, certain is right in the middle of the word ascertain. And the Fifth Circuit and the Ninth Circuit have explained that that statutory text is the hook for this unambiguous and unequivocal rule. Our position is that the clock did not start running because that exchange of paper in February 2022 did not allow us to ascertain unambiguously and unequivocally that the case had become removable. And so the clock... So you say that that paper did not show up until November the 15th? That's right. I think that was the first paper from which it at least arguably could be clearly and unambiguously a basis for removal. I think there's a complicated question. I don't think the court has to decide it about whether, when we ultimately do remove, it has to be... You're saying prior to that, there was never a statutorily clear point where you could have removed before that paper? I think not quite. I'm saying there's never a statutory... With one small amendment. There was never a point at which the statute required us to remove within 30 days because there was an unequivocal and unambiguous basis for removal. There were other defendants that did remove earlier. Is that correct? There were other defendants that removed the original complaint on different grounds, on CAFA grounds and federal question grounds. And that case was ultimately remanded. I don't ultimately read the district court to rely on that. I don't ultimately read the county to rely on that. And I think that's right. As we cite the KrevCorp case and the Dalton case from this court, I think it's well established that a different factual basis can support removal. If I could say one last... Well, let me just follow up. So you say that the February 3rd, 2022, sixth red flag analysis, that doesn't qualify as such a paper? That does not qualify as a paper that would trigger the statutory standard. This isn't because? Because it does not clearly and unambiguously or unambiguously and unequivocally put us on notice that the case had become removable. Now, I want to follow up. I think, you know, inside that question is an important point, which is, you know, I think the district court may be relying and the county may be relying on the idea that we had to remove that day. After all, they withdrew it the next day and later stipulated. But I think that would be a very dangerous holding because that would essentially turn the textually specified 30-day period into a 24-hour period. And it would essentially set up a loophole whereby a plaintiff can say, you know, sort of gotcha, where a plaintiff can say, OK, you have a basis to remove, but now we've immediately withdrawn it. And if you don't remove in the face of our withdrawal, you've forever waived or forfeited. So what about the February 14th analysis that was reserved that still included federal prescriptions? Right. I think that doesn't qualify. Clear, in my view, not really even close to clear and unambiguous because after all, we responded to that by asking the county, did you mean to include these federal prescriptions? And they said, no, we didn't mean to do that. And to the degree we've caused confusion, that's a quote from the stipulation, we're stipulating to the contrary. So that, you ask that question in the March 10th letter? Precisely, Judge Shepard. But doesn't that March 10th letter admit, essentially admit, that the February 14th document was such an other paper? And that's the reason you're asking them to stipulate to the contrary? This is where the difference. How do you get out of that? I think there's a way to get out of it. It's where the different standard makes all the difference. All we were saying in that letter is we have the right to remove, we could remove. We did not say we have an unequivocal, unambiguous basis to remove such that the 30-day clock will start running. And in fact, we said in that letter, it is, quote, impossible to ascertain, closed quote, what your claims are relying on. What is the best case that distinguishes between these sorts of different rights to removal, right? The obligation you're saying that, you know, what is the case that I need to look to to solidify that distinction you're making? Your decision and the court's decision in Gibson versus Clean Harbor is the best one. But it's not the only one. It cites a whole bunch of other circuits. And we've cited, I think, pages 24 and 25 of our brief collect those citations. I might reserve my time for rebuttal. Thank you, Your Honor. Thank you, Mr. Mischel. Mr. Conrad. May it please the court, Johan Conrad of the Sequoia Law Firm for Jefferson County, Missouri. This court should affirm the district court's opinion granting the motion remand on three independent bases. The first is that the removal is untimely. The second is that the joint stipulations and orders that were entered in this court disclaiming any liability for federal plans, severed the required nexus connecting this case to activities that the PBMs took under the direction of a federal officer, which is what would be required. And then third, something that you all touched on a second ago, the PBMs waived the right to remove. They waived it both by an express agreement and they waived it impliedly by their course of conduct. Let me talk about the timing because that's where you guys were when I stood up here. So, Judge Shepard, you referred to the March 10, 2022 letter. And I think that's maybe the best place to start in this case. The March 10, 2022 letter, which is both in the addenda to our briefs and also appears in Appendix 592, the very first paragraph says, Council, we write on behalf of the PBM defendants to notify the county that unless it informs the PBM defendants by March 14, 2022, that it is withdrawing all challenges to federal prescription claims, the PBM defendants intend to remove this case to federal court. That was the very first paragraph. Page two of the letter, the defendants again say, the PBM defendants are entitled to remove the case to federal court because the February 14th responses show federal prescription claims. Page three of the letter says, the February 14th red flag analysis shows for the first time that the county contends that many different federal prescription claims support its claims against the PBM defendants. Given that fact, the PBM defendants are entitled to remove this case to federal court. The paragraph just below that on page three says, again, page three of the letter, unless the county informs the PBM defendants in writing on or before March 14, that it is withdrawing challenges to federal prescription claims and not seek recovery for those, the PBM defendants will remove the case to federal court. Those statements are, I think, as unequivocal and unambiguous as you can get. If you read this court's decision in Gibson, you read other cases that talk about this clear and unequivocal standard, they say the problem is we don't want to have to get into the defendant's subjective frame of mind, what it might have known. It's all about investigating the opposing party's claim. Gibson, of course, was a CAFA case. Gibson specifically says this is a CAFA case. We're going to decide this in the CAFA context. But regardless, it had to do with questions about the size of the class, the monetary damages, and how you pin that down. Because, of course, it had to be more than $5 million in aggregate and all those kinds of things. And so the information, the facts that were presented to the defendants there, did not ever actually show that it exceeded those statutory thresholds for CAFA removal. And the court said we're not going to go into the defendant's subjective intent on what it may have investigated behind whatever it was told by the plaintiffs. We don't want to get into that. That's why we want it to be an unequivocal statement. This is what the numbers are. This is where your basis to remove is. Here, as, in fact, the court in the Western District of Virginia, which in a case that was just affirmed by the Fourth Circuit last week, said in her opinion, dealing with these same defendants, in very similar factual circumstances where there was a similar letter that said we have an immediate right to remove unless you enter into a stipulation. The federal judge there said, look, you keep telling me about all these cases that talk about an unequivocal right to remove. You wrote a letter that said we have an unequivocal right to remove right now unless you entered a stipulation. The plaintiff then entered the stipulation. You can't come back and argue to me now that you didn't know that you had an unequivocal right. Will you be bound by that stipulation? Absolutely. We have never said we're not bound by the stipulation. We have always maintained that we never violated the stipulation. And I'd like to talk about the stipulation actually briefly, just as a quick aside. That stipulation isn't just a stipulation about federal plans. It's a stipulation that specifically ties in these things that we're talking about with removal. If you look at the stipulation, the second it has whereas clauses, the stipulation in order entered by the court, but it has whereas clauses. There's a second whereas clause. The whereas clause says the plaintiffs served us an interrogatory response that had federal prescription plan claims. We were going to have the right to remove. We told the plaintiffs that we were going to remove unless they entered the stipulation. So now we're entering the stipulation. The whole point of the stipulation was to say we're not going to remove this case. We're going to proceed in state court and we are going to rely on this stipulation in order so that the state court judge can police whether or not you, the plaintiff, are improperly trying to inject federal prescription plan claims into this case. We have never, ever in any context, whether in this case or others where the case in Martinsville, Virginia was actually removed based on activities that happened in this case. We got a letter after this case was removed in Martinsville that said, hey, are you going to do the same thing in Martinsville that you did in Jetco? And we said, well, we're going to abide by all the stipulations. And they said, well, that's not good enough, and they removed the case. We have never, ever said in any context that we are not going to abide by the stipulation. In fact, the whole point of having the stipulation entered as an order by the state court judge was so that the state court judge would have the ability to directly police whether we were complying with the stipulation. I mean, what would be the point of having it entered as an order otherwise? The whole point is so that you can go and file a motion to show cause or a motion to compel compliance with the order and say, judge, we think that the plaintiffs or the defendants, as the case may be, have violated the terms of the stipulation and order. And then the state court judge can look at the facts and say, okay, they did or they did not. Now, the other thing that I want to say about the stipulation that goes to the issue of whether or not there is even a basis to remove on federal officer grounds is I want to talk momentarily about the breadth of the stipulation and the bilateral nature of the stipulation. All of the other disclaimer federal officer cases that have been popping up all over the country, they all involve situations where the plaintiff, either in a complaint or in a later stipulation, unilateral, just by the plaintiff, said, we are not going to seek to recover for federal claim claims. This case and the one in Martinsville are unique in that this is the one situation where the defendants, who otherwise would have had the right to remove, and the plaintiff jointly negotiated the wording of a stipulation, entered into that stipulation, and then had it entered by the state court judge. That makes this case unique from all these other cases that talk about disclaimers and whether or not there is federal officer jurisdiction. This particular stipulation also happens to be extremely broad. You probably noticed when you looked at the record that the stipulation says that the plaintiffs cannot seek to recover or establish liability based on federal prescription claim claims. But then, in Exhibit A, it goes on to define the specific federal health plans that are covered by the stipulation. I counted last night. Exhibit A has 146 federal health plans listed. So the plaintiffs in Jefferson County stipulated that they would be prevented from attempting to establish liability on the PBM's activities with respect to 146 different federal health plans that were potentially at issue. This stipulation order could not have been more broad. It could not have been more directly enforceable because of the fact that it was entered by the state court judge as an order. There's frankly nothing, I can't imagine a circumstance, where it could have been more expressed, clear, and broad to deal with this issue. Which brings me to the third point that I mentioned in the beginning, which is the waiver issue. The district court did not reach the waiver issue. But, as someone in a previous argument mentioned, and as you all well know, you can affirm a case on any basis that appears in the record. By the way, the defendants have actually said that we've waived some things because we talked about them in footnotes and otherwise. As this court well knows, when you're seeking to affirm a district court judgment as opposed to reverse a district court judgment, this court can affirm on any basis that appears in the record. It doesn't really matter what was argued when. If you're trying to reverse the district court judgment, it's a different rule, and you all have cases that have recognized that distinction. So you can affirm on any basis, notwithstanding whether the district court looked at it. So with respect to waiver, there's two different bases for waiver. One is an express agreement. And we cited this court to its Medtronic decision. Now Medtronic was a little, slightly different, in the sense that it involved a pre-suit form selection clause, where the parties agreed that the case would stay in state court and would not be removed to federal court. The interesting thing about that case, though, and the thing that makes it most applicable here, is that it recognizes that you can have an express agreement not to remove even before you know the bases for removal. You can agree not to remove before the case is even filed, before you even know whether you have a federal question basis or a federal officer basis or a CAFA basis. You can reach an enforceable agreement not to remove in the complete abstract. Now, let's shift to this case. Not only are we not in the complete abstract, when this stipulation and order and agreement not to remove was entered in March of 2022, it was 150% knowable what the basis for removal was. Everybody knew what the arguments for removal would have been. It was crystal clear laid out in that March 2022 letter that I just read portions of to you. This was the most knowing, wide open, bilateral. Both parties had equal bargaining power. In fact, actually, the PBM defendants had more bargaining power because they were threatening to remove the case to federal court. They offered. They said, stipulate or we're going to remove. Jefferson County accepted. They said, okay, we'll stipulate. You won't remove. And that's an enforceable agreement. Couldn't be more clear. And it's explicit. I know that the cases in this court and others have said, well, an agreement not to remove has to be explicit. Everybody has to know for sure you're waiving your right to remove. Well, as I said, the second whereas clause says we're entering into this because we said we're going to remove unless you stipulate. That was the whole point of it. Now, the PBMs have referenced in their briefing a line at the very end of the stipulation that says the PBMs reserve all rights, et cetera, et cetera. And they've said, well, that means that we reserve the right to remove. Well, what they don't focus on is that the very first clause of that line at the end of the stipulation in order says, except as otherwise agreed here, we reserve all rights. Okay, so you say that the appellant says we're going to remove unless you stipulate. Yes. And so you stipulate. We did. How, then, do we deal with the November 15th expert reports? The appellants say that the expert reports of that day expressly rely on federal prescriptions. So, number one, why is that not like an abandonment of that stipulation? Well, it's not an abandonment of the stipulation because, first of all, you can't abandon a stipulation that the state court has entered as an order. We can't abandon an order. That was the whole point of having it entered as an order. So once the state court says this is what your case is, I mean, that was a ruling effectively on the merits. The state court was saying this is what your case is. You cannot pursue federal prescription plan claims. Okay, assuming that's true, explain the November 15th expert reports. The expert reports were wide-ranging. They were lengthy. They dealt with, I don't have the exact number in front of me, but it's hundreds and hundreds of thousands of different pieces of data. In general, what those expert reports talked about, what that referenced federal prescription plan claims would have to do with the knowledge that the PBMs had about the claims that they were paying that covered opioids generally. In other words, you've got a situation where when we talk about claims in this, we're talking about what the PBMs do is they pay the pharmacy directly for every single prescription that a member of a health plan is a member of. And every time they pay on those prescriptions, it generates a claim. So the claims data is a gigantic spreadsheet that's hundreds of thousands of lines long, in some cases millions of lines long depending on how many prescriptions you're talking about. So what our experts did was in taking all of that data, those hundreds of thousands of data, and talking about it, they didn't parse out the federal prescription plan claims from the other claims. They said, you know, there's 150,000 prescriptions. What would be the purpose of including all of that when none of, there wouldn't be damages coming from the federal processes? Well, there's a couple things where the knowledge of the volume of the opioids is number one. Number two, there's knowledge of what the federal government was mandating because there was some evidence in the case that the federal government mandated that the PBMs take certain action to restrict opioids, but then the PBMs did not take that action on the side of the commercial plans. And so they didn't restrict opioids in the commercial space in the way that they were required to in the federal space. So we were never saying, you didn't do what you were supposed to do with federal prescription plan claims. We never said that. What we said was, here's a bunch of information. You should have been acting in a particular way in connection with all of your commercial plan claims, and you didn't do it. So in our view, we did not violate the stipulation. Now, whether the state court judge would disagree with that is, I suppose, a different question. But the whole point of having the stipulation entered as an order was to give the state court judge the ability to police that. I mean, you wouldn't have had it entered as an order otherwise. In fact, that's what the district court judge in Martinsville said as much. He said, well, I mean, if you really think this is a problem, your remedy is to go to the state court judge and say, you violated the stipulation, and we need relief. And that was a decision that the PBM defendants took with the eyes wide open to enter into that stipulation knowing that they had the right to remove at the time. And it looks like my time is up, so unless there's further questions, I'll retire. Thank you, Mr. Conrad. Mr. Michel, your rebuttal. Thank you, Your Honor. A few very quick points. First, I think much of what my friend on the other side said amounts to, because we could remove, we had to remove under the statute. But as the case is cited on pages 24 and 25 of our brief, and this court's decision in Gibson say that is simply not the correct syllogism. It is not true that because we could remove, we had to remove within 30 days under the statute. The test is that there had to be a clear, unambiguous, unequivocal basis, and that was not satisfied here. In fact, one of the reasons for that standard that this court explained in Gibson is to prevent gamesmanship. And what my friend on the other side for the county respectfully is doing here is gamesmanship. He is saying, the county is saying, that we had to remove at a time when they said there was not a basis for removal. And now he said, in response to Judge Shepard's question, I think he admitted that they are now relying on federal plans, and they are relying on them to establish an element of their state law claim, to come back to Judge Kobus' first question and the argument. That is for or related to work under federal officers within the heartland of the federal officer removal statute. And my last point, going to the state court to adjudicate the stipulation is not enough. The federal officer removal statute's purpose, as the Supreme Court said in Willingham and other cases, is to ensure that federal officers and those acting under them can bring these claims, these defenses, in federal court, not state court. I would ask the court to reverse. Thank you, Your Honors. And just one last question. With all of the litigation taking place around the country on this issue, is there a case that's dealt with this issue from another circuit? The timing issue or the substantive issue, Your Honor? Both. Right. So no other cases on the timing issue. My friend is correct that Martinsville, the case in the Fourth Circuit, was the closest one. But as we explained in our response to the 28J letter, that the Fourth Circuit's decision is extremely narrow. It applies clear error review to a factual finding that the district court made in that case, that the district court in this case did not make. In fact, as I think my friend candidly acknowledged, the district court in this case did not say anything about waiver. As for the merits of the removal, the best case is the First Circuit's recent decision in the Puerto Rico v. Express Scripts case. That involved us, Express Scripts, and another pharmacy benefit manager. Critically, a unanimous panel, the First Circuit, as we explained in our 28J letter, said that the disclaimer that Puerto Rico submitted in that case was not effective to defeat removal because the PBM's conduct, including negotiating rebates, one of the same claims asserted here, was indivisible between federal and non-federal work. And therefore, the case had to proceed in federal court. This court should hold the same. Thank you, Your Honor. The court appreciates both counsel's participation and argument. It's been helpful. We'll continue to wrestle with it and render decisions. Thank you.